## KETCHEL *v.* KETCHEL.

1. EASEMENTS—IMPLIED GRANT—PRESCRIPTIVE USE—WAY OF NECESSITY—PERMISSIVE USE.

   Trial court's finding that plaintiffs had acquired no easement by prescriptive use of private way during 32-year period since division of farm on easterly side of lake between 2 brothers to whom their mother had conveyed it shortly prior thereto *held*, proper under evidence presented, where although the way was visible and had been used before severance of the estates, it was not reserved, it does not appear to have been a way of necessity, in view of use made of farm lane to westerly end of the property, and the use which has been made of the claimed way was permissive.

2. SAME—IMPLIED GRANT—VISIBLE DEPENDENCY.

   The law will not imply a grant of serviency by the severing grantor if there is no visible dependency at the time of severance.

3. SAME—IMPLIED GRANT—BURDEN OF PROOF—EVIDENCE.

   A party who claims that grant of an easement may be implied, upon severance, has the burden of proving the factor of visible dependency by preponderant proof.

4. SAME—VISIBLE DEPENDENCY OF ACCESS—SEVERANCE OF ESTATE.

   A way constitutes an easement appurtenant to the estate granted and passes to the grantee as accessorial to the beneficial use

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 17A Am Jur, Easements §§ 56, 57.
  Roadway or pathway used at time of severance of tract as visible or apparent easement. 164 ALR 1001, 1007.
[3] 17A Am Jur, Easements § 65.
[4] 17A Am Jur, Easements § 41.

and enjoyment of the granted premises, where the owner of the entire estate had made the granted part of it visibly dependent for the means of access upon the other through the use of the way.

Appeal from Kent; Hoffius (Stuart), J. Submitted June 7, 1962. (Docket No. 25, Calendar No. 49,-236.) Decided July 2, 1962.

Bill by James Stanley Ketchel, Elsie Ketchel, Harry J. Mulder, and others against Violet Ketchel and Arthur Ketchel, Sr., to affirm a private way over defendants' land and to enjoin interference therewith. Bill dismissed. Plaintiffs appeal. Affirmed.

*Roach, Smolenski & Twohey (Edward L. Twohey, of counsel), for plaintiffs.*

*Milanowski & Milanowski (John P. Milanowski, of counsel), for defendants.*

Black, J. What is known in the record as the Ketchel farm, extending at the time some 3,000 feet east from the easterly shore of Kent county's Little Pine Island lake to a north-south public highway, was divided in 1928 by the common tenants thereof, brothers Leon Ketchel and Arthur Ketchel. The division was accomplished by written agreement of the parties and execution and delivery, one to the other, of quitclaim deeds. Leon received what may roughly be called the north half of the farm, with Arthur receiving the south half.

The agreement called for a survey of the farm as a basis for conveyance. It was executed July 23, 1927. A satisfactory survey was thereafter made and, March 31, 1928, the mentioned deeds were delivered and recorded. Both deeds were unconditional in form. Neither made reference to or suggested

reservation or grant of a way across either of the 2 parcels. Neither did the agreement for such division.*

Plaintiffs, claiming through since deceased Leon, filed this bill for an injunction and judicial determination that they are possessed of an implied easement appurtenant, to the estate granted Leon, over the westerly portion of the estate granted Arthur, for northerly and southerly ingress and egress between the westerly or lake front portion of Leon's parcel and a public highway known as Pine Island drive. They rely particularly upon rules appearing in *Kamm* v. *Bygrave,* 356 Mich 189; *Rannels* v. *Marx,* 357 Mich 453; and *Harrison* v. *Heald,* 360 Mich 203 and, in addition, claim acquisition of such easement by user.

---

* The agreement was prepared agreeably by competent counsel. It reads, exclusive of preliminary and concluding declarations, as follows:

"The parties hereto have recently received a deed of conveyance from their mother, Julia Ketchel, transferring to them all of the real estate now owned by her in Plainfield township, Kent county, Michigan. It is their desire after said property shall have been properly surveyed and staked in order to divide it as hereinafter expressed, to exchange conveyances between themselves so that each will hold a portion of said property in his own name. They have, therefore, agreed as follows:

"1. The deed from Julia Ketchel to the parties hereto has been taken subject to this agreement and is made a part hereof so that if necessary, the deeds to be hereafter exchanged may be executed the same as purchase price mortgage, that is, without the wife of the parties hereto signing.

"2. The parties hereto agree that their attorneys, Messrs. Dunham & Cholette, shall make immediate arrangements with Theodore Williams, county surveyor, to survey the property and mark it out as hereinafter set forth.

"3. The island located in Pine Island lake in said township of Plainfield, is to remain the joint property of the parties hereto, unless at some time in the future one should agree to sell to the other.

"4. The balance of the property shall be surveyed so that it may be divided equally between them, that is, so that each shall have an equal number of acres and each shall have an equal amount of lake frontage, the property to be divided, however, so that Arthur A. Ketchel shall receive the south portion of the farm and the pavilion, so-called, located upon the shore of Pine Island lake.

"5. As soon as said survey shall have been completed, the deeds shall be prepared as hereinbefore indicated and shall be immediately executed and exchanged by said parties."

The way plaintiffs would use of decreed right is private. It extends northwesterly across the lake front end of Arthur's parcel from—and is part of— a way which leads from the south toward the Ketchel farm. Its principal use is that of access by motor car to and from a pavilion on Arthur's parcel where defendants conduct a resort business. The pavilion is on the lake shore, near the northerly boundary of said parcel. Such boundary is, of course, the dividing line between the 2 mentioned parcels. Plaintiffs claim such way extended, at time of severance, entirely across Arthur's parcel and on in a northwesterly direction over their parcel to certain lake-fronted cottages which had been built thereon. They contend, in addition to their allegation of implied grant, that they have acquired such easement right "on prescriptive use for upwards of 32 years" (since 1928).

The chancellor ruled, properly as we conceive, that all disclosed use of the questioned way, since 1928 by Leon and others claiming under him, was permissive in fact. It was held accordingly that no easement by prescription should be decreed. Judge Hoffius turned then to the cited cases and distinguished them as follows:

"In the case at bar there is no doubt that the way to plaintiffs' property was apparent and visible to the parties at the time of their division. There is some doubt, however, that this particular road was 'necessary to convenient use of the property' at that time. It is true that it was in existence, but the farm lane was also in existence and was probably the better used means of access at the time of the division of the property.

"The important consideration in this case, however, is the fact that we have 3 of the original 4 parties to the division of the land in 1928, in court before us. If this court were to spell a different agree-

ment than the parties executed it would be working a great injustice on defendants. Their failure to start litigation, and their failure to create quarrels with plaintiffs' tenants, cannot be used to plaintiffs' advantage in this litigation. Accordingly, an easement across defendants' premises will not be granted by this court."

We agree. Plaintiffs would extend, quite unduly, the rule of *Kamm, Rannels,* and *Harrison* by disreregarding the first premisory requisite thereof. Among other things it must be shown, in order that such rule come to effective play, that the severing owner has, prior to or at time of severance, made the conveyed parcel "visibly dependent for the means of access" upon the parcel retained by him (quotation from *Bean* v. *Bean,* 163 Mich 379, 397, citing *National Exchange Bank* v. *Cunningham,* 46 Ohio St 575 [22 NE 924] and followed in *Kamm*). If there is no visible dependency at the time of severance, then it is not reasonably necessary—"for the fair enjoyment" of the conveyed parcel—that the law imply a grant of serviency by the severing grantor.

Here, by severance, Leon received title in fee to a parcel 660 feet (plus) wide which extended all the way from Little Pine Island lake on the west to the public highway on the east. Thus no "visible dependency" was affirmatively shown. To be explicit, it is not disclosed that, on account of condition of the terrain thereof or otherwise, Leon could not have made his entire tract accessible to the highway which bounded same on the east. And if the then available "farm lane" mentioned by Judge Hoffius did not traverse from east to west *all* of the parcel awarded Leon (the fact is left in doubt save only as to heatedly disputatious representations of counsel), such lane concededly did extend easterly from the lake over much of that parcel. This simply suggests that

one who would rely upon the rule that grant of an easement may be implied, upon severance, had best prove the factor of visible dependency by preponderant proof. The chancellor was left in doubt, by plaintiffs, on that score. So are we.

The rule we apply was, as noted in *Kamm*, taken from *Bean* v. *Bean, supra*. It is that "When the owner of an entire estate makes one part of it visibly dependent for the means of access upon another, and creates a way for its benefit over the other, and then grants the dependent part, the other part becomes subservient thereto, and the way constitutes an easement appurtenant to the estate granted, and passes to the grantee as accessorial to the beneficial use and enjoyment of the granted premises" (p 397). Perhaps, in view of Professor Aigler's justified or unjustified criticism of *Kamm, Rannels,* and *Harrison* (59 Mich L Rev 432–437), we might advisedly and for the sake of desirable accord dub this a rule of "strict necessity." Yet on second thought it would seem that "visibly dependent" is just as strong as "strict necessity"; also that it pertinently means quite as much. When one parcel of property is, by act of the grantor, made "visibly dependent for the means of access" on what that grantor retains, it would seem that a case of "strict necessity" has been made. Be that as it may, no such case appears from this record.

Affirmed. Costs to defendants.

CARR, C. J., and DETHMERS, KELLY, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.